Judge Buckner
delivered the opinion of the court.
This whs an action of ejectment, instituted upon a demise, in the name of Lillard vs* McGee. Each party attempted to derive title under the same patent. The deed under which the plain' tiff claimed, was executed io him by D. Ryan, and bears date on the 27th 'of April, 1827; that under which the defendant claimed, was m ide by G. Thomp? son, and was dated on the 27th of June, in the year 1815.
The defendant had not at any time lived upon the land in contest, but a witness sworn on the trial, stated that McGee, the defendant, had taken possession of it immediately alter the execution ol the said deed of June, 1815; that he shortly afterwards cut house logs upon it, and in 1821 had built thereon a horse mill; and that he still continued to be so in possession. Another witness also, stated, that he had possession of the land aforesaid, at the date of the deed to Lih lard of April, 1827.
The circuit court upon the motion of the defendant, instructed the jury, that if they believed from the1 evidence, that the defendant was in the adverse possession of said land, claiming title to the same, whether the said defendant had any written, or record evidence of title or not, under the act of the general assembly, entitled, “an act to revive and amend the champarty and maintenance law, and more effectually to secure the Iona fide occupants of land within this commonwealth, approved, 7th day of January, 1824. The deed made by David Ryan to the plaintiff was void, and that plaintiff had no right to recover, to which instruction the plaintiff excepted.
The jury having returned a verdict for the defend - ant, the plaintiff moved for a new trial, but the court overruled the motion, and entered a judgment in pursuance of the verdict, to reverse which, Lillard pros ecu tes this appeal,
Judgment will not be reversed, because the jury may passively have misunderstood an instruction given them.
The only point presented, necessary to be considered is the propriety of the instruction given by the , court.
It has been insisted by the counsel of the plaintiff that if the state of the case made out by the defendant, would in any aspect, bring him within the protection of the act of assembly referred to, it is nevertheless, manifest, that the court erred in not restricting the adverse possession, to the time at which the deed from Ryan to plaintiff bears date; but that the statute was not intended to apply to cases, where, as here, the parties derive their respective titles from the same source, and that the possession contemplated by the act, was a pedis possessio.
As to the first point, it is true, that it is, in cases only where some person, other than the vendor or vendee, has possession of the land sold, at the time of such sale, adverse to the right or title so sold, that the deed of conveyance or bond, or executory contract is declared void; and it would therefore be evidently erroneous to instruct a jury that an adverse possession at any other period, would, under the provisions of the.statute, have on the contract, such a vitiating effect. The language employed in the instruction, is not as definite and perspicuous as it might have been; but it. is not tobe presumed, that the jury could have misunderstood, or been misled by it. The plaintiff did not pretend to derive title in any other way, than by the deed from Ryan of April, 1827. It had been exhibited by him, as the only foundation of his claim, and the proof was clear, that the defendant’s possession had been uninterrupted from its commencement in 1815, (when he received his deed from Thompson) to that period. It maj be possible, that the jury misunderstood what the court clearly intended to be understood; but we do not think that it is by any means probable, nor could it, under the proof, have produced any iujurious effect upon the claim of the plaintiff, if they had misunderstood it. That the attorney for the plaintiff understood the instruction, as applying to the date of deed, is very probable, from the fact of his omission to call for any further explanation on that point; and we should not feel justified in reversing the judgment of the circuit court, because the, jury may possibly *551 have understood the instruction in a sense different from that intended, by giving to it, a construction, of which, under the circumstances of the case, it was reasonably susceptible.
Act of’24 a^rt^anoain’’ maintenance, does not limit chase'pre-' rights or *‘tle which another may have the adverse posse^wborsUie* titles are derived from different, sour-oes, but is e-qaally pro-dePHiolding under same patent with fhev'clairneci* under different entries or Patents-
The second ground assumed, is equally untenable. The act does not limit .the prohibition to purchase pretended rights or titles to land, of which another may have the adverse possession, to cases where the titles are derived from different sources; but is as general as language could make it. It declares, “that no person shall sell or purchsae by deed or anee, or bond, or executory contract, any pretended right or title to land, of which any other person, than such vendor or vendee, shall at the time of such sale or purchase, have possession, adverse to the right or tille so sold or purchased, and every deed, convey-anee, bond or contract made, executed, or entered into, in violation of this section, shall be void.”
. rhe second section it may be contended, renders this construction somewhat doubtful. It provides, “that jt shall not be lawful, for any person or persons, to contract, or undertake to recover, or carry on any suit, for the recovery of any such pretended right or title to land as aforesaid, of which adverse possession is held under conflicting title as aforesaid, &c.” The wordsconflicting title” are not found in the first section, and at first view, might be supposed to confine the provisions of the act, to conflicting titles, originating under adverse entries and patents. But, although the legislature may, perhaps, have so intended, there is nothing in the clause to warrant such an interpretation of it, conflicting claims or titles, máy originate from the same source. The object was to suppress litigation, and to quiet the possessions of actual occupants, who, having settled in good faith, believed their titles tobe valid, however erroneous their impressions respecting them may have been. Disputes originating under adverse patents, are to be sure, much more common, than those of the other character spoken of; and the former may, therefore, have more imperiously demanded legislation; but the evils to be remedied in the one, and the other class of cases, differ only in number. The value attached to real property, and the importance of its quiet enjoy,. *552 roent,as if relates lo the melioration of the soil, and ^le improvement and prosperity ot' the country, require that the repose of j.ts occupants, who hold it, claiming it as their own, should not be disturbed by the sale of it, when neither vendor nor vendee is in possession. Whether therefore, we look to the evil designed to be guarded against, or to the terms of the act, we are conducted to the same conclusion.
.t/edis possession is notnewssa-ry to entitle a def’t to the protection of the act of ’24s againstcham-partj and maintenance. The possession, contemplated by the act of ’24, against chana-party and maintenance, is an actual posse s¡on, but to constitute it snc.h, it is not necessary that occupant be (spttled’ or •‘living’ upon the land, if occupant has taken possession, & Hmproved’ the land, altho’ he may not be settled or living upon it he is entitled to nrcection, under the act.
The expressioris in the instruction “whether the defendant had any written, or record evidence of title or not,” cannot be successfully relied upon as a ground to rev¡ rse the judgment. It cannot possibly have misled the jury, because the defendant’s deed was exhibited, had been read as evidence to the jury, and there was not any objection to it.
We are also of opinion, that the third and last ground assumed in argument by the counsel of the plaintiff, cannot be supported, if by pedis possession be means that the defendant, to avail himself of the protection of the statute, must have been necessarily settled or living upon the land. The possession contemplated by the act, was an aclual possession; but to constitute it such, il is not necessary that the occupant should live upon the land.
In the case ol Braxdale vs. Speed, I. Marshall, 10S, and that of Smith vs. Mitchell, ibid. 208, this court held, that an occasional use of ground for years irs succession, did not confer upon the person so using if, such a possession, as would bar the right of entry of a senior patentee. But in each of those cases it appeared, that the persons claiming to have had the possession of the land in contest for twenty years previous to the commencement of suit, had neither settled upon, nor improved it. The senior patentee in such case has a right to consider each act of occupation, as a mere temporary intrusion. But in this case, McGee had actually improved the land in contest, by the erection of a mill in 1821, and was proved, to have had the uninterrupted possession of it from the year 1815. The bill of exceptions, moreover, does not show that the statements there exhibited, were all the testimony in the cause. Other evidence may have been detailed, which might have saved the trouble of investigation upon this point
Cunningham, for appellant; Talbot and for appellee.
The judgment of the circuit court must be affirm-<sd with costs.